**Bucks County Water and
Sewer Authority v. Meyers**

*Howard T. Gathright,* for plaintiff.
*Richard P. McBride,* for defendant.

RUFE, 3rd, J., April 5, 1973.—Plaintiff, Bucks County Water and Sewer Authority, has filed a municipal lien claim against defendants in order to recover public sewer rental charges for service supplied to defendant's property in New Hope Borough. Defendants defend on the basis that the estimated rates as applied to their property are unreasonable in light of meter readings registering substantially less sewage flow than they have been charged for. Trial without a jury was heard before the undersigned on February 13, 1973, and from the testimony and exhibits presented the court makes the following

## FINDINGS OF FACT

1. Plaintiff is the Bucks County Water and Sewer Authority, a municipal corporation, formed and existing under the provisions of the Municipality Authorities Act of May 2, 1945, P. L. 382, 53 PS §301, et seq., and having as its principal place of business the Neshaminy Manor Center, Bucks County, Doylestown, R. D. Pa.

2. Defendants, John F. Meyers and Edna Meyers are individual persons, sui juris, who own a restaurant motel/hotel complex in the Borough of New Hope, Bucks County, Pa. known as the "Canal House."

3. Plaintiff owns and operates a public municipal sanitary sewage disposal system in the Borough of

New Hope, Bucks County, Pa., for which service it makes regular charges, as established by law, to the users of the system and against all premises in said Borough of New Hope upon which there are structures erected that are accessible to said system.

4. The "Canal House" complex is accessible to the said public sanitary sewage disposal system and is served by that system, pursuant to the provisions of New Hope Borough Ordinance No. 164 enacted on August 9, 1965, making it mandatory for owners of buildings in the borough to connect to the system.

5. The "Canal House" complex is comprised of a restaurant with 44 seats at tables in an indoor dining room, 10 seats at a bar and 144 seats on an outdoor terrace; 10 motel/hotel units all containing ône bedroom, and bathroom, but no kitchen or laundry facilities; and one commercial shop.

6. By resolution enacted on August 17, 1965, plaintiff established rates for sewerage treatment service supplied by its system, which resolution provided, inter alia:

"Section III. SEWER RENTALS:

". . .

"B. *Other than Residential User*

"Each non-residential user shall be rated by the Authority's Engineer on an equivalency basis. An equivalent is defined as a user who discharges into the sanitary sewer system 240 gallons per day. The minimum number to be assigned to any one user shall be not less than one equivalent . . . $30.00 equivalent per quarter.

". . .

"D. *Special Conditions*

"(a) Each non-residential user shall have the right to install a meter or meters under the supervision of the Authority for purpose of re-evaluating the equiva-

lency rating established. However, in no case will re-evaluation be considered if the meter is installed for a period less than twelve (12) months.

"(b) The Authority reserves the right to make necessary inspections to establish and to re-evaluate any non-residential equivalency rating of users connected to its system."

7. Prior to the commencement of sewage treatment service to the "Canal House" complex defendants installed three meters to measure the amounts of water going into the complex. The meters were installed at locations selected by and in the manner directed by duly authorized representatives of plaintiff, and were again inspected by plaintiff's representatives when the seals were broken to put the meters in operation at the time sewage treatment service was extended into the complex.

8. The meters measured all of the sewerage generated by the restaurant and commercial shop units of the complex, but did not measure the sewerage flowing from the 10 motel/hotel units of the complex.

9. Plaintiff billed defendants for service not on the basis of the metering of the actual sewage flow, but rather upon standard estimates of flow as applied to all commercial users in the borough. Specifically, defendants were billed for equivalencies calculated by charging each of the 198 restaurant/bar seats with 10 gallons of sewage per day divided by the 240 gallon per day equivalency factor or 8 equivalencies. (198 seats x 10 gallons ÷ 240 gallons per equivalency = 8 equivalencies.) Defendants were also billed for two commercial units charged at one equivalency each, despite the fact only one commercial shop was contained in the complex. Finally, defendants were billed one equivalency for each of the 10 motel/hotel units.

10. The restaurant and commercial shop units of

the complex were billed at the commercial rate of $120 per year per equivalency, or $1,200 per year; and the motel/hotel units were billed at the motel rate of $50 per year per equivalency, or $500 per year.

11. The equivalency estimate of the plaintiff of 10 commercial equivalencies at 240 gallons each per day calculates to an annual flow of 876,000 gallons of sewerage per year. (10 equivalencies x 240 gallons each x 365 days = 876,000 gallons per year).

12. Meter readings on the sewage flow from the restaurant and commercial shop units of the complex showed 1,866,800 gallons flowed into plaintiff's system from the inception of service in October, 1966, until November 13, 1972.

13. The average sewage gallonage flowing into plaintiff's system has been 311,133 gallons per year (1,866,800 gallons ÷ 6 years), or 852.41 gallons per day (311,133 gallons ÷ 365 days per year), which is equal to approximately four equivalencies (852.41 gallons per day ÷ 240 gallon equivalency factor). Hence, the equivalency factor that plaintiff should have applied to defendants' restaurant and commercial shop units is 4, instead of the 10 imposed.

14. The 10 motel/hotel units, which were not metered, were operated as an integral part of the "Canal House" complex, and as such fall within the commercial or nonresidential use classification rather than the "Residential User" classification, thereby subjecting those units to the equivalency factor billing procedure of 240 gallons per day.

15. The 10 motel/hotel units have an equivalency factor of 40 gallons per day per unit, or a total of 400 gallons per day or 2 equivalencies (400 gallons per day ÷ 240 gallon equivalency factor). Hence, the equivalency factor that plaintiff should have applied to defendants' motel/hotel units is 2 based on the

nonresidential rate of $30 per equivalency per quarter rather than 10 based on the residential rate of $12.50 per quarter per equivalency as actually imposed.

16. Plaintiff authority adopted a resolution on December 5, 1967, deleting from the August 17, 1965, resolution (see finding of fact no. 6) the right of non-residential users to install meters. Said resolution makes no reference to meters previously installed or properly in use pursuant to the original resolution of August 17, 1965, and therefore has no effect on the meters installed by defendants as a means of calculating the sewage flow from defendants' property.

## TESTIMONY AND DISCUSSION

Plaintiff provides invaluable sanitary sewerage collection and treatment service for defendants as well as other property owners in the Borough of New Hope. This service must and should be properly paid for. Defendants, on the other hand, should pay only their fair share for the actual service they receive.

It is generally agreed that the best way to determine and calculate the exact fair share of expense for the service provided by plaintiff would be for all customers to have their actual sewage flow metered, and each then pay for their actual metered flow. However, plaintiff apparently elected not to go to the expense of metering all of its customers, or requiring all customers to install their own meters. Instead, a system of estimating sewage flow was adopted based on average amounts of sewage generated by different types of property uses as determined from experience in other areas and as translated into charts published by the Public Health Service of the U.S. Department of Health and Welfare, and generally accepted as authoritative in the field. Plaintiff also reserved the right

to "re-evaluate any nonresidential equivalency" in the event there was an apparent disparity between the estimates and the actual flows.

In addition, in an abundance of fairness, plaintiff did authorize customers to install at their own expense, and at plaintiff's direction, meters to aid and assist in determining the actual flow in order to calculate the equivalency accurately. Defendants availed themselves of this opportunity with the result that the meters disclosed the sewage flow estimates greatly exceeded the actual flow from defendants' property.

With this disheartening news, plaintiff sought to bill defendants on their estimates rather than actual flows, and further sought to withdraw from its customers the right to install meters to determine actual flows, apparently in fear that other users might also have actual flows lower than the estimates they were being charged for. We have found that the amending ordinance revoking the right to install meters is not effective as to defendants, whose meters were properly and legally installed, and, accordingly, we do not have before us, nor do we decide, the question of the legality of the amending ordinance withdrawing the right to install meters as it may apply to any other customers of plaintiff.

In view of the fact that plaintiff's rates are fixed with precision (one equivalency for each 240 gallons of sewage per day), and plaintiff afforded defendants the alternative of accepting plaintiff's estimate (as per the chart submitted in Exhibit D-1) or determining the flow with precision by installing meters at plaintiff's direction, we find that plaintiff is bound by the more precise measurement of defendants' sewage flow in applying its equivalency rate, and accordingly, defendants should be billed for equivalencies for the restaurant and commercial shop units rather than the

10 equivalencies estimated by plaintiff, for the period from the inception of service until November 13, 1972.

The procedure for billing the 10 motel/hotel units has previously been established by this court in the case of Bucks County Water and Sewer Authority v. Pamela Minford, March term, 1970, no. 607, where Judge Beckert held that motel/hotel units forming an integral part of a commercial complex on the same tract of land in a situation remarkably similar to the present instance must be considered on the commercial/nonresidential basis. In that case it was not clear whether the motel units fell within the 40 gallon per day motel units or the 50 gallon per day motel with kitchen wastes units as provided on the Quantities of Sewage Flow chart submitted into evidence as Exhibit D-1 in the instant case and Exhibit DW-2 in the Minford case. Accordingly, the court in Minford used the figure of 45 gallons per day for the equivalency determination. However, in the present case defendants clearly eliminated any question about kitchen wastes in the motel/hotel units, and therefore brought those 10 units into the 40 gallon per day classification. We note, however, that at either 40 gallons per day, or at 45 gallons per day as in Minford, the equivalency factor of 2 remains the same (40 gallons per day x 10 = 400 and is less than 480 gallons per day for 2 equivalencies, just as 45 gallons per day x 10 = 450 and is less than 480 gallons per day for 2 equivalencies).

Accordingly, plaintiff is entitled to receive payment for sewage treatment service in the amount of $2,880 for the restaurant and commercial shop units of the complex for the period from October, 1966, to November 13, 1972. ($30 per equivalency x 4 equivalencies x 24 quarters.) In addition, plaintiff is entitled to re-

ceive payment in the amount of $1,440 for the motel/hotel units of the complex for the period from October, 1966, to November 13, 1972. ($30 per equivalency x 2 equivalencies, x 24 quarters.) Penalties should be added thereto in the amount of $117 representing $9 delinquency per quarter after giving defendants credit for full payment in the first 11 quarters for the $1,983.75 they paid on account. Thus, the total amount of plaintiff's verdict should be $4,437 covering the period to November 13, 1972, less the amount of $1,983.75 previously paid on account, or a total of $2,453.25. Meter readings may be taken to calculate the new and appropriate charges from and since that date on the restaurant and commercial shop units of the complex, and new calculations, consistent herewith, may be made on the motel/hotel units since that date.

## CONCLUSIONS OF LAW

1. Plaintiff's charges for sewage treatment service to defendants' property based on estimates greatly in excess of the actual sewage treatment flow, as metered, are unfair and unreasonable.

2. Plaintiff's charges to defendants for sewage treatment service for the restaurant and commercial shop units for the period from the inception of service until November 13, 1972, should be calculated on the basis of 4 equivalencies, as measured by the meter flow, rather than the 10 equivalencies actually billed, as estimated by plaintiff.

3. Plaintiff's charges to defendants for sewage treatment service for the motel/hotel units for the period from the inception of service until November 13, 1972, should be calculated on the basis of 2 equivalencies on the nonresidential rate, as calculated from

the table of Quantities of Sewage Flow, rather than the 10 residential equivalencies actually billed.

## ORDER

And now, this April 5, 1973, it is hereby ordered and decreed that a verdict be entered against defendants and in favor of plaintiff in the sum of $2,453.25.